**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MIGDALIA PINEDA,**

       **Plaintiff,**

**v.**                                                **Case No: 6:18-cv-1569-Orl-CEM-DCI**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

       **Defendant.**

___

**REPORT AND RECOMMENDATION**

Migdalia Pineda (Claimant) appeals the Commissioner of Social Security's final decision denying her application for disability benefits and supplemental security income. Doc. 1. Claimant argues that the decision of the Administrative Law Judge (ALJ) is not based on substantial evidence and additional evidence warrants remand under sentence six of 42 U.S.C. § 405(g). (Doc. 30 at 27, 30). Claimant requests that the final decision be reversed or, in the alternative, remanded because "it is not supported by substantial evidence under sentence four and/or sentence six of 42 U.S.C. § 405(g), respectively." *Id.* at 33. For the reasons set forth below, it is respectfully recommended that the Commissioner's final decision be **AFFIRMED**.

      **I.**      **Procedural History**

This case stems from Claimant's application for a period of disability and disability insurance benefits and supplemental security income. Doc. 30 at 1. In both applications, Claimant alleged a disability onset date of September 10, 2015. *Id.* The claims were denied initially and upon reconsideration. *Id.* A hearing was conducted and on January 4, 2018, and the ALJ found

that Claimant was not disabled and issued an unfavorable decision. *Id.*; R. 25. On August 1, 2018, the Appeals Council denied the request for review. R. 1-10.

## II. The ALJ's Decision

In the decision, the ALJ found that Claimant has the following severe impairments: osteoarthritis and degenerative disc disease of the cervical and lumbosacral spine, degenerative joint disease of the right knee, and osteopenia (20 CFR 404.1520(c) and 416.920(c)). R. 17. The ALJ further found that Claimant does not have an impairment or combination of impairments that meets or medically equals any listed impairment. R. 19.

The ALJ found that Claimant had the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) with the following specific limitations:

> She can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; and stand, walk and sit for up to 6 hours each in an 8-hour workday. She can frequently reach overhead to the left. She can occasionally climb ramps and stairs; occasionally climb ladders, ropes or scaffolds, frequently stoop, and occasionally kneel, crouch and crawl. She can work in extreme cold occasionally, extreme heat occasionally and in vibration occasionally.

R. 19.

The ALJ concluded that Claimant is capable of performing past relevant work as a machine operator. R. 24. Ultimately, the ALJ found that "claimant has not been under a disability, as defined in the Social Security Act, from September 10, 2015, through the date of this decision (20 CFR 404.1520(f) and 416.920(f))." *Id.*

## III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards, and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)

(quotations omitted). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.  Discussion**

**A. Claimant contends that the ALJ did not properly rely on the testimony of the Vocational Expert (VE).**

Claimant argues that the VE's testimony conflicted with the Dictionary of Occupational Titles (DOT) and the ALJ erred by failing to identify and resolve the conflict. Doc. 30 at 7, 22. Claimant relies on *Washington v. Comm'r*, 906 F.3d 1353 (11th Cir. 2018), in support of her argument. *Id.*[1] Under *Washington*, the Eleventh Circuit recently clarified that "the ALJ has an affirmative obligation to identify any 'apparent' conflict [between the VE's testimony and the DOT]

---

[1] Even though *Washington* was decided after the ALJ's unfavorable decision, it appears that it applies retroactively. *Buckwalter v. Saul*, 2019 WL 153606, at *33 (S.D. Fla. Sept. 9, 2019) (finding no bar to *Washington's* retroactive application.); *see also e.g. Evans-Sweny v. Comm'r of Soc. Sec.*, 2019 WL 949302 (M.D. Fla. Feb. 27, 2019) (analyzing the claim under *Washington* even though it was decided after the ALJ's decision); *Schoenradt v. Berryhill*, 2018 WL 851417, at *5 (M.D. Fla. Feb. 22, 2019) (same).

and to resolve it."[2] *Washington*, 906 F.3d at 1362; *see* SSR 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704. The Circuit explained:

> The ALJ must ask the VE whether there is a conflict *and* must ask for an explanation if there appears to be a conflict. Whenever a conflict is 'apparent,' the ALJ must also ask the VE about it. Moreover, '[w]hen an ALJ identifies an apparent conflict that was not raised during a hearing, [the ALJ] can request an explanation of the conflict by submitting interrogatories to the vocational expert.' During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them.

*Washington*, 906 F.3d at 1362 (emphasis and alterations in original) (internal citations omitted) (citing *Pearson v. Colvin*, 810 F.3d 204, 208 (4th Cir. 2015)). By failing to identify and resolve apparent conflicts, an ALJ breaches "his duty to fully develop the record and offer a reasonable resolution of [the] claim." *Id.* at 1366. A conflict is "apparent" if it "seem[s] real or true, but not necessarily so" to an ALJ with ready access to and close familiarity with the DOT. *Id.* (quoting *Pearson*, 810 F.3d at 209). An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE." *Id.* at 1365. Instead, "[a]t a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.*

Here, Claimant's argument regarding the alleged conflict is twofold and relates to the ALJ's decision at step 4 where he determined that Claimant could perform past relevant work as

---

[2] After Claimant's initial discussion of *Washington*, the Joint Memorandum has the following footnote: "The Commissioner objects to the inclusion of this paragraph as it is an expansion of Plaintiff's argument that was added in non-compliance with the scheduling order. The Parties could not agree to a resolution other than to note the Commissioner's objection." Doc. 30 at 8, n.3. The parties do not address the nature of this apparent violation of the Scheduling Order or cite to the relevant language in that Order. Thus, the Court is uncertain as to the import of the footnote.

a machine operator.[3]  Claimant contends that the VE inaccurately testified that Claimant's past work was "light" when, in fact, it was "medium" or even "heavy" and the VE misclassified her past work under a specific job title.  Doc. 30 at 22.

The following are relevant excerpts from the hearing:

| | |
|---|---|
| ALJ: | Can you write in English? |
| Claimant: | Some things, not much. |
| ALJ: | Did you work at all after September 10, 2015? |
| Claimant: | No |
| ALJ: | Have you worked anywhere besides Southeast Imprinted Apparel in the last 15 years? |
| Claimant: | What is that? Was that Southeast Imprinted Apparel? |
| ALJ: | Yes. |
| Interpreter: | She asked what is that? |
| ALJ: | It was your last employer. |
| Claimant: | Creative Chart International. |
| ALJ: | Okay.  And what did you do there? |
| Claimant: | Embroidery. |
| ALJ: | How long did you work there? |
| Claimant: | Like eight years, more or less. |
| ALJ: | And what kind of items were you embroidering? |
| Claimant: | Some kind of cap or a hat and shirts and towels. |
| ALJ: | What kind of machinery were you using? |
| Claimant: | It was a machine with 12 heads by computer. |
| ALJ: | When you were working there how much of the time were you standing or walking? |
| Claimant: | Eight hours. |
| ALJ: | What was the heaviest that you had to lift there? |
| Claimant: | 40 pounds. |
| ALJ: | And what kind of items were you lifting over 40 pounds? |
| Claimant: | They were either boxes that were filled with t-shirts, caps or towels. |
| ALJ: | What kind of work did you do for Oxford Building Services? |
| Claimant: | I don't know which one that is. |
| ALJ: | It's also listed under Barbara Edwards. |
| Claimant: | Barbara Edwards? |
| ALJ: | This was 2009 and 2010.  Did you have another job during that time? |
| Claimant: | I remember I had a part-time that was cleaning. |
| ALJ: | What were you cleaning? |
| Claimant: | Cleaning offices. |

\*\*\*

---

[3] The decision provides that "[t]his work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 CFR 404.1565 and 416.965)." R. 24.

| | |
|---|---|
| ALJ: | There is also some earnings from Saya [phonetic] and Stitches? |
| Claimant: | yeah. |
| ALJ: | Is that the same job? |
| Claimant: | That was another job.  That was the job that I had for the longest time. |
| ALJ: | Okay.  Were you doing embroidering there as well? |
| Claimant: | Yes, the same. |
| ALJ: | Okay. And how heavy did you have to lift there? |
| Claimant: | There I had to, the boxes, I did make to move heavier weight and I was also a supervisor. . . plus I was using my own machine which was a 4-head. |

R. 45-48

| | |
|---|---|
| ALJ: | Do you have adequate information to classify the work in the last 15 years as it was actually performed by the claimant and as generally performed? |
| VE: | Just working on the embroidery machine, what was the exertional force? |
| ALJ: | Okay, Ms. Pineda, when you were working on the embroidery machine you indicated that part of the job was lifting up to 40 pounds, is that correct? |
| Claimant: | Yes. |
| VE: | Okay.  Thank you.  I'm ready.  Embroidery Machine Operator, Dictionary of Occupational Titles code number 786.685-018, "Light" exertion, with a Specific Vocational Profile of "2."  I heard in testimony that the job have been performed at medium level as actually performed due to exertional forces of up to 40 pounds to perform that job.  And cleaner, commercial or institutional, DOT number 381.687-014, heavy with an SVP of 2.  That's all, Your Honor. |
| Attorney: | What level was it, medium or light or what? |
| VE: | Heavy. |
| ALJ: | The commercial cleaner was heavy. |
| Attorney: | Heavy.  Thanks. |
| ALJ: | For this hypothetical 1 please assume a person the claimant's age and education with the past work you identified, assume that this person is limited to light work, lifting, carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently, sitting, standing and walking up to six hours each out of an eight-hour day.  The person would be limited to frequent reaching overhead with the left upper extremity.  That is the non-dominant.  There would be no such limitation on the right.  The person can occasionally climb ladders, ropes or scaffolds.  The person may frequently stoop, but only occasionally kneel, crouch and crawl.  The person would be limited to occasional exposure to extreme cold, extreme heat and vibration.  Would that allow for performance of past jobs? |
| VE: | The job can be performed within the limitations of that hypothetical is Embroidery Machine Operator as performed but not as actually performed. |
| ALJ: | For hypothetical 2, if the exertional level is reduced to sedentary with all the other limitations remaining the same as in hypothetical 1, would that allow for performance of the past job? |
| VE: | No. |

- 6 -

    ALJ:        Would there be any skills from the past work that would transfer to sedentary work?
    VE:         No.
    ALJ:        Has your testimony been consistent with the Dictionary of Occupational Titles?
    VE:         Yes.

R. 56-58.

With respect to her first argument under *Washington*, Claimant states that the ALJ determined that she could not perform her past relevant work as it was actually performed but could perform her past relevant work as it is generally performed under the DOT. Doc. 30 at 17. Claimant states that the ALJ relied upon the VE's testimony to arrive at this decision, but Claimant argues that the testimony conflicted with the DOT. *Id.* Specifically, Claimant states that her past relevant work was actually "heavy" or "medium" exertional work and clearly not "light" exertional work. *Id.* Claimant asserts that "[b]ased upon both the Work History Report and the testimony at the administrative hearing, [Claimant's] past work was, in fact, "Medium" exertion work (or heavier) due to [Claimant's] job requirement of frequent lifting and carrying of materials that weighed 40 pounds." *Id.* at 18.

Claimant states that the VE initially explained that Claimant's past relevant work was performed at the medium exertional level due to the exertional forces of up to 40 pounds to perform that job, but then "inexplicably" and "inaccurately categorized [Claimant's] past work as 'light' exertion level work." Doc. 30 at 19. Claimant argues that the ALJ did not identify or explain the VE's conflicting testimony. *Id.*

The undersigned does not see an inaccuracy or a conflict. At the fourth step of the sequential evaluation, the burden lies with Plaintiff to show that she cannot return to her past relevant work as she actually performed it *or* as it is performed in the general economy. *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 830 (11th Cir. 2013); *Battle v. Astrue*, 243 F. App'x 514,

522 (11th Cir. 2007); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) (emphasis added).

While the VE stated that Claimant performed her job as an Embroidery Machine Operator at the medium level due to the amount of lifting, he did not state that Claimant could perform the job within the limitations of the hypothetical as actually performed. R. 56-58. Instead, the VE stated that the past relevant work can be done as *generally performed*, and the Embroidery Machine Operator has a "light" level of exertion. *Id.* In other words, it was accurate to find that she *actually performed* the past relevant work at a medium level of exertion even though Embroidery Machine Operator is "light exertion." It is clear from the testimony that the VE based his finding that she could not perform the Embroidery Machine Operator job as "actually performed" because of the lifting involved in her past work and, therefore, found that she could only perform the job as "generally performed." Indeed, the RFC allows performance of less than the full range of "light work" and, after review of the VE's testimony, the ALJ found that Claimant can perform her past relevant work as it is *generally performed*. R. 19, 24. Accordingly, the undersigned finds that there was no conflict or even an apparent conflict for the ALJ to identify and resolve.

Claimant then adds that the VE misclassified her past work as "Embroidery Machine Operator" under DOT Code 786.685-018. Doc. 30 at 19. The undersigned finds no significant distinction between this argument and the last. Specifically, Claimant states that this "job classification was another 'apparent conflict' because the [DOT] classifies that job code as requiring a 'light' level of exertion (i.e. lifting and carrying objects frequently weighing up to 10 pounds and occasionally 20 pounds)." *Id.* Claimant contends that she did not perform the job of Embroidery Machine Operator. *Id.*

Embroidery Machine Operator is described in the Dictionary of Occupational Titles as follows:

> Tends semiautomatic sewing machine with multiple-sewing heads controlled by pattern chain that embroiders designs on garments or garment parts: Positions garment or part over embroidery hoops arranged in hoop frame, following edges or markings on fabric. Places hoop frame on machine bed and turns thumbscrews to secure frame to machine. Presses button to start machine that sews design onto garment or part and stops, or sews one color of multiple-color design and stops. When sewing multiple-color designs, rethreads machine with subsequent colors of thread and starts machine to complete design. Removes hoop frame from machine on completion of design and removes garment or part from hoops.
>
> STRENGTH: L - Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. . . .

DOT Cod # 786.685-018.

Again, while Embroidery Machine Operator has a "light work" exertion level and Claimant lifted more than this level permits, the VE agreed that she could not perform the past relevant work as she *actually performed* the job. Instead, she could only perform as *generally performed* which is at a "light work" level. There is nothing to show a misclassification. So, while Claimant tries to create an apparent conflict, the undersigned finds that there was no discrepancy between the VE's testimony and the DOT. *See Buckwalter v. Saul*, 2019 U.S. Dist. LEXIS 153606, at *33 (S.D. Fla. Sept. 9, 2019) ("[T[here still must be some sort of conflict to trigger an ALJ's SSR 00-4p, 2000 SSR LEXIS 8 duty of inquiry and resolution [under *Washington*]. If there is no conflict---neither real nor apparent---then there is nothing for the ALJ to address.").

Further, Claimant's second attempt to identify an "apparent conflict" does not persuade the undersigned that she is entitled to relief. Claimant agrees that if an ALJ determines that a claimant cannot perform the past work as it is actually performed, then the ALJ must determine if the

claimant can perform the work as it is generally performed according to the DOT. Doc. 30 at 8-9. However, Claimant adds that the ALJ is only permitted to reach the "generally performed" inquiry if the past work is not identified as a "composite job." *Id*. at 9. Claimant contends that her "past work cannot be pigeon-holed into only one specific job title as classified by the [VE] (i.e. Embroidery Machine Operator)." *Id*.[4]

Indeed, Claimant is correct that the analysis differs when a plaintiff's past relevant work qualifies as a composite job. *Smith v. Comm'r of Soc. Sec.*, 2018 WL 3598635, at *3 (11th Cir. July 26, 2018). A composite job is one that has "'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT.'" *Id.* (quoting SSR 82-61). For past relevant work to qualify as a composite job, the main duties of the past relevant work must include multiple DOT occupations as described by the plaintiff. *Id.* (citing Program Operations Manual System ("POMS") DI 25005.020). "When the claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed." *Id.* (citing SSR 82-61).

Here, Claimant argues that there are seven different jobs that have shared characteristics with her past work, including Hat-and-Cap Sewer; Cap-Maker; Supervisor, Cap-Hat Production; Trimmer; Cutter, Hand I; Hat Finisher; and Hat Maker. Doc. 30 at 9-10. Claimant contends that since the VE inaccurately identified Embroidery Machine Operator as her specific job title rather than as a composite job, the VE created an apparent conflict with the DOT. *Id*. at 22. Claimant

---

[4] After the sentence regarding the "pigeon-hole" argument, the Joint Memorandum includes the following footnote: The Commissioner objects to the inclusion of this paragraph as it is an expansion of the argument added in non-compliance with the scheduling order. The Parties could not agree to a resolution other than to note the Commissioner's objection. Doc. 30 at 9, n.5. Again, the parties do not elaborate exactly how the argument does not comply with the Scheduling Order or otherwise provide a citation to the relevant language in the Order.

states that the "record read together is so ambiguous that the Court is unable to make a meaningful review as to whether [Claimant's] job as an Embroidery Machine Operator was, or was not, a composite job comprised of shared characteristics with seven other jobs and job titles in the [DOT]." Doc. 30 at 21-22. Claimant argues that her "job duties and job descriptions, as corroborated by [her] testimony at the hearing as well as the Work History report in the record, clearly reveals that her past work is a shared combination of many jobs and many job titles." *Id*. at 9.

The undersigned fails to find any type of ambiguity at all. The record contains Claimant's testimony regarding her past relevant work and her "Work History Report." Claimant clearly discusses her history as an embroiderer involving her work on a machine. R.45-48. Claimant highlights the record where she says "cap" and "hat" (Doc. 30 at 4), but those were just the items she was embroidering with the machine. There is nothing in her testimony regarding hat making, sewing, cutting, etc. to support characterizing her past work as "composite." Further, as Claimant points out, there is a Work History Report in the record. R. 254-258.[5] The report lists her previously job title as "embroidery" and under the description "operate embroidery machine" is hand-written. R. 255. There is nothing in the report to reflect any of the activities associated with the other seven jobs.

Based on the foregoing, the undersigned agrees with the Commissioner that it is obvious that the VE was correct in identifying Claimant's past work as an Embroidery Machine Operator and that she can perform that work as it is generally performed in the national economy. As such, there was no suggestion of a discrepancy between the VE's testimony and the DOT that the ALJ

---

[5] The record includes another Work History Report dated September 14, 2015. R. 241-248. The report provides that Claimant was a machine operator at a printing company and a machine operator at an embroidery manufacture. R. 241.

failed to identify and resolve. Since there was no conflict or apparent conflict for the ALJ to address given a reasonable comparison of the DOT with the VE's testimony, then there is no error under *Washington*.

> **B. Claimant contends that additional evidence warrants remand under sentence six of 42 U.S.C. § 405(g).**

The records to which Claimant cites were not presented to the ALJ and were not submitted to the Social Security Administration's Appeals Council. That said, the sixth sentence of 42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commissioner of Social Security for consideration of new evidence that previously was unavailable. To show that a sentence six remand is needed, the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

"New evidence is evidence that was not in existence or available to claimant at the time of the administrative proceeding." *Jones v. Comm'r of Soc. Sec. Admin.*, 497 Fed.Appx. 888, 892 (11th Cir. 2012) (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007)). New evidence is chronologically relevant if it "relates to the period on or before the date of the ALJ's hearing decision." *Hargress v. Comm'r Soc. Sec. Admin.*, 883 F.3d 1302, 1308 (11th Cir. 2018).

Here, Claimant now submits the following records:

(1) Emergency Room medical records from the Florida Hospital dated 10/10/2016 (Ex. 1);

(2) Emergency Room medical records from the Florida Hospital dated 2/7/2018 (Ex. 2);

(3) Emergency Room medical records from the Florida Hospital dated 6/24/2018 (Ex. 3);

(4) Consultative Examination by physician Dr. James Sun, M.D. dated 12/15/2018 (Ex. 4);

(5) Consultative Examination by psychologist Dr. John Beltran, Psy.D dated 12/18/2018 (Ex. 5); and

(6) Determination by non-examining state agency physician consultant dated 12/30/2018 (Ex. 6).[6]

Doc. 25-1.

With respect to the Emergency Room record from the Florida Hospital dated October 10, 2016 (Doc. 25-1 at 1-19, Ex. 1), the evidence is not new and Claimant has not advanced good cause for failing to present the evidence to the Commissioner. The ALJ's decision was not reached until January 4, 2018, and the Appeals Council denied the request for review on August 1, 2018. R. 1, 25. The hearing conducted by the ALJ was November 15, 2017, which was also after the date of this record. R. 15. Accordingly, the 2016 record could have been submitted while Claimant's administrative proceeding was ongoing. Claimant states that "good cause exists for submitting this evidence to the Court because all of the records post-date the ALJ's unfavorable decision except for the ER records dated October 10, 2016." Doc. 30 at 31. Claimant does not separately address the reason why the 2016 record was not submitted or was otherwise unavailable. As such, a sentence six remand is not available as it relates to the 2016 record.

Likewise, the Emergency Room records from the Florida Hospital dated February 7, 2018 (Doc. 25-1 at 20-30, Ex. 2) and June 24, 2018 (Doc. 25-1 at 31-67, Ex. 3) were both in existence

---

[6] Claimant did not attach these records to the Joint Memorandum. *See* Doc. 30. Instead, the records are attached to the Motion for Summary Judgment, which was stricken. Doc. 25, 25-1.

before the Appeals Council denied the request for review on August 1, 2018. Doc. 25-1; R. 1.[7] "Our settled precedents establish that a sentence six remand is available when evidence not presented to the Commissioner *at any stage* of the administrative process requires further review." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 at 1267 (11th Cir. 2007) (citations omitted) (emphasis added). Even though these records were dated after the ALJ's decision, it appears Claimant could have submitted them to the Appeals Council before that decision not to review was denied. *See id* at 1268 ("[The Eleventh Circuit has] held that remand under sentence six is appropriate for the Commissioner to consider new evidence that the Commissioner did not have an opportunity to consider because the evidence was not properly submitted to the Appeals Council."). Accordingly, Claimant was required to provide good cause as to why the records were not submitted, which she has not done. Relief under sentence six, therefore, is not available with respect to the Emergency Room records from the Florida Hospital dated February 7, 2018 and June 24, 2018. (Doc. 25-1, Exs. 2, 3).

Assuming that these three records (Doc. 25-1, Exs. 1-3) are "new" and good cause is shown, Claimant is still not entitled to relief. Specifically, with respect to the Emergency Room records from October 10, 2016 and June 24, 2018 (Doc. 25-1, Exs. 1, 3) relating to Claimant's cerebral infarction and Transient Ischemic Attack (TIA), and also the Psychological Evaluation by Dr. Beltran done on December 18, 2018 (Doc. 25-1 at 75-77, Ex. 5), the undersigned finds that there is no reasonable possibility that these records would change the unfavorable decision. *See*

---

[7] The February 7, 2018 record provides that it was electronically signed on February 8, 2019 and co-signed on February 9, 2018. Doc. 25-1 at 25, Ex. 2. The radiology report was transcribed on February 8, 2018 and the microbiology testing was "FINAL" on February 9, 2018. *Id*. at 27, 30. The June 24, 2018 record was electronically signed on June 24, 2018, the discharge summary was signed June 25, 2018, and the radiology "final report" was transcribed and signed on June 24, 2018. Doc. 25-1, Ex. 3 at 36, 41, 44, 48, 49, 53, 54.

*Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) ("The new evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'").  Claimant simply provides a summary of the records and makes no attempt to demonstrate that the evidence is likely to change the decision, nor does she suggest what, if any, additional functional limitations are evidenced by the records.  As such, Claimant fails to show how the alleged new evidence directly relates to her alleged impairments.  *See Grissett v. Comm'r of Soc. Sec.*, 695 Fed. Appx. 497, 502 (11th Cir. 2017) (finding that new evidence was not material because it was consistence before the ALJ, and the "report did not purport to offer an opinion on [the claimant's] ability to work, nor does [the claimant] identify in particular how the report casts doubts on the ALJ's decision.").

Even if there was meaningful discussion of the records with respect to the Emergency Room October 10, 2016 and June 24, 2018 records pertaining to Claimant's facial swelling and numbness (Doc. 25-1, Exs. 1, 3), the undersigned still fails to see how Claimant's diagnosis created specific functional limitations that precluded her from engaging in substantial gainful activity. Claimant's statement that she was diagnosed with cerebral infarction and TIA is not enough.  It is well-established that it is the functional limitations from an impairment, and not the diagnosis of an impairment, that are determinative in an evaluation of disability.  Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The October 10, 2016 and June 24, 2018 Emergency Room records (Doc. 25-1, Exs. 1, 3) do not show how Claimant's diagnoses created specific functional limitations that precluded the plaintiff from engaging in substantial gainful activity.  *See id*.

Also, even if Claimant offered some meaningful explanation regarding Dr. Beltran's December 18, 2018 Psychological Evaluation (Doc. 25-1, Ex. 5) and how it relates to the ALJ's decision, which she did not, the ultimate question is whether she was entitled to benefits during a specific period of time before the ALJ's decision. *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). While the evaluation may arguably reflect that Claimant's mental condition has worsened after the ALJ issued the decision as shown through the doctor's observations, any deterioration after that point would not be relevant. *Enix v. Comm'r of Soc. Sec.*, 461 Fed.App'x 861, 863 (11th Cir. 2012) (citing *Wilson,* 179 F.3d at 1279 ("Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review.").

Finally, Claimant includes a December 30, 2018 Consultative Examination from the non-examining state agency physician. (Doc. 25-1 at 78-89, Ex. 6). This evidence does not support remand because there is no showing that it is chronologically relevant. New evidence is chronologically relevant if it "relates to the period on or before the date of the ALJ's hearing decision." *Hargress*, 883 F.3d at 1308. According to this evaluation, it was determined that Claimant was disabled with an alleged onset date of January 5, 2018. Doc. 25-1 at 87. There is nothing to show, and certainly no discussion to demonstrate, that the evaluation relates to the ALJ's January 4, 2018 decision or an earlier date even if the onset date comes one day later. As such, the evidence does not warrant remand.

Moreover, Claimant's argument fails to explain how the record would have changed the ALJ's decision or impacted the RFC. Claimant's conclusory assertions that the evidence is "material" and "good cause" is shown are insufficient.

## CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **AFFIRM** the final decision of the Commissioner; and

2. Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant and close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**DONE** and **ORDERED** in Orlando, Florida on October 16, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
The Court Requests that the Clerk
Mail or Deliver Copies of this order to:
The Honorable Eric S. Fulcher
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
3505 Lake Lynda Dr. Suite 300
Orlando, FL. 32817-9801